**Pedro and Olga A. BARRERA,
Plaintiffs-Appellants,**

v.

**SECURITY BUILDING & INVESTMENT CORPORATION et al.,
Defendants-Appellees.**

No. 74–2565.

United States Court of Appeals,
Fifth Circuit.

Sept. 25, 1975.

J. L. Covington, Texas Rural Legal Aid, Inc., Edinburg, Tex., for plaintiffs-appellants.

Ann Gann, Jack Wiech, Brownsville, Tex., for defendants-appellees.

C. C. Small, Jr., Austin, Tex., for Texas Savings and Loan League, amicus curiae.

Before WISDOM, SIMPSON and RO-NEY, Circuit Judges.

WISDOM, Circuit Judge:

Pedro and Olga Barrera, plaintiffs-appellants, lost their house and lot to Security Building and Investment Corporation in a non-judicial foreclosure under a power of sale they had conferred on Jack D. Wiech in a deed of trust. They brought this § 1983[1] action to recover damages and for a declaratory judgment of the unconstitutionality of Article 3810, Tex.Rev.Civ.Stat., the Texas statute setting minimum procedural requirements for exercise of such powers of sale.[2] The Barreras contend that the

---

1. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Article 3810 provides:

All sales of real estate made under powers conferred by any deed of trust or other contract lien shall be made in the county in which such real estate is situated. Where such real estate is situated in more than one county then notices as herein provided shall be given in both or all of such counties, and the real estate may be sold in either county, and such notice shall designate the county where the real estate will be sold. Notice of such proposed sale shall be given by posting written notice thereof for three consecutive weeks prior to the day of sale in three public places in said county or counties, one of which shall be made at the courthouse door of the county in which such sale is to be made, and if such real estate be in more than one county, one at the courthouse door of each county in which said real estate may be situated, or the owner of such real estate may, upon written application, cause the

non-judicial foreclosure deprived them of their property without due process of law in violation of the 14th Amendment. The district court found no "state action" and dismissed the suit. We affirm.

The Barreras, migrant workers, owned a residential lot in Brownsville, Texas. In April 1971 they discussed with employees of Security Building and Investment Corp. the possibility of their building a house on their lot. The discussions were conducted in Spanish because the Barreras' had only a limited understanding of English. Security's employees informed them that a ready-built house could be moved to their lot and finished to their specifications. The Barreras say that they were also assured that flexible financing could be arranged allowing them to miss monthly payments when they were not working in the fields. The agreement that the Barreras signed did not, however, require Security to complete the house to the Barreras' satisfaction and specifications. Nor did it provide for the flexible financing arrangements that the Barreras say they were promised. Instead, the document set forth conventional financing terms. It required no down payment, but obligated the Barreras to make 180 equal monthly payments of $65 and other payments into an escrow fund to cover insurance and taxes.

As security for payment of this obligation, the Barreras executed a deed of trust, naming Jack D. Wiech, an officer of Security, the trustee and conveying to him, as trustee, the deed to their property. Discharge of the indebtedness, the

trust instrument provided, would void the transfer.[3] Default, on the other hand, would entitle the debtor, at its option, to accelerate the indebtedness. The trustee would then be empowered and obligated to sell the property to satisfy the outstanding obligation. The trust instrument incorporated the requirements of Article 3810 Tex.Rev.Civ.Stat.: it required the trustee to advertise the sale for at least 21 days by posting notices at three public places (one of them the courthouse door) in the county where the land was located; it required that the sale be made by public auction, between 10 a. m. and 4 p. m. in front of the courthouse, to the highest bidder for cash.[4] It did not require that personal notice be given to the Barreras. It specified that the lender was entitled to purchase the property at such a sale and that the sale would act as a perpetual bar to the debtors, their heirs, and assigns. The contract specified that after sale by the trustee, the debtors would occupy the status of tenants at sufferance, and that the purchaser would be entitled to immediate possession and empowered to maintain an action for forcible detainer to secure possession.

The Barreras, immediately after executing this document, left Texas for California. When they returned to Texas a few months later, they concluded that Security's performance had not met its representations. On advice of counsel, they withheld payment. They discussed their grievances with Security but failed to settle their differences. When the Barreras had refused, for two

---

same to be sold as provided in said deed of trust or contract lien. Such sale shall be made at public vendue between the hours of 10 o'clock a. m. and 4 o'clock p. m. of the first Tuesday in any month. When any such real estate is situated in an unorganized county, such sale shall be made in the county to which such unorganized county is attached for judicial purposes.

3. The deed of trust is the prevailing form of security in Texas. See Cotellesse, Nonjudicial Foreclosure Under a Deed of Trust: Some Problems of Notice, 49 Tex.L.Rev. 1085 (1971). Although in form it consists of a conveyance

to a person in trust to hold the property as security for the payment of a debt to the lender, it is held to be in legal effect a mortgage with a power of sale. It subjects the land burdened to a lien but does not divest the grantor of legal title. See 39 Tex.Jur.2d, Mortgages and Trust Deeds § 2 (1962). Powers of sale, contained in either conventional mortgages or deeds of trust, are currently in general use in eighteen jurisdictions in this country. They are considered valid, but are rarely used, in others. G. E. Osborne, Handbook on the Law of Mortgages 726 (2d ed. 1970).

4. See Footnote 2.

to three months, to make payments on the note, Security decided to accelerate the indebtedness and to instruct Wiech to sell the property according to the terms of the deed of trust. Wiech posted the notices as required in the deed of trust and also (and this was not required) mailed a copy of the posted notice of sale to the Barreras two weeks before the date fixed for the sale. On February 1, 1972, Wiech sold the property at public auction to Security, which later sold it to a third party. After this final sale, the Barreras proferred payment of one installment. Security returned the check. It also advised them that their property had been sold and that they were to remove their belongings. They complied "under protest".

## I.

The Fourteenth Amendment provides, in part:

"No state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law . . ."

"The Fourteenth Amendment prohibits the state from depriving any person of life, liberty, or property, without due process of law; but it adds nothing to the rights of one citizen as against another." *United States v. Cruikshank,* 1875, 92 U.S. 542, 23 L.Ed. 588. The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer,* 1946, 334 U.S. 1, 68 S.Ct. 836, 842, 92 L.Ed. 1161. The question here, as in all Fourteenth Amendment actions, is whether "there is a sufficiently close nexus between the state and the challenged action . . . so that the action . . . may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Company,* 1974, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477. This question is more easily stated than resolved. State involvement in undertakings otherwise private is protean and elusive: Can it be fairly said that the state was so closely involved in this non-judicial foreclosure that the state has, in some realistic sense, acted to deprive the Barreras of their property?

The Barreras advance a number of arguments. They argue that Article 3810 "controls and directs" the contested practice and represents in itself significant state involvement in foreclosure by sale. They also argue that the state through comprehensive and detailed regulation of mortgage transactions and, more generally, real property transactions, has sufficiently implicated itself in private foreclosure practices so that they may be treated as acts of the state for Fourteenth Amendment purposes. Finally, the Barreras contend that in tolerating non-judicial foreclosure, the state has surrendered a traditionally governmental function to private parties.

This Court has reviewed and rejected similar contentions raised with regard to challenges to the self-help repossession and sale codified in Sections 9–503, –504 of the Uniform Commercial Code. *James v. Pinnix,* 5 Cir. 1974, 495 F.2d 206; *Brantley v. Union Bank and Trust Company,* 5 Cir. 1974, 498 F.2d 365, *cert. denied,* 419 U.S. 1034, 95 S.Ct. 517, 42 L.Ed.2d 309; *Caulderon v. United Furniture Company,* 5 Cir. 1974, 505 F.2d 950. These contentions, we conclude, are not more persuasive as applied to non-judicial foreclosure under a power of sale.

We are not the first court to arrive at this conclusion. Three of our district courts and a Texas court of appeals have agreed that no significant state action is involved in non-judicial foreclosures under a deed of trust conforming to the requirements of Article 3810. *Leisure Estates of America v. Carmel Development Co.,* S.D.Tex.1974, 371 F.Supp. 556; *Hoffman v. H.U.D.,* N.D.Tex.1974, 371 F.Supp. 576; *Carmel v. Federal National Mortgage Association,* N.D.Tex.1973, CA–3–7158–L; *Criss v. Federal National Mortgage Association,* M.D.Tex.1973, CA–3–7044–E; *Armeta v. Nussbaum,* Tex.Civ.App.1975, 519 S.W.2d 673. The Circuit Court of Appeals for the District

of Columbia has reached the same conclusion on a similar statute in its jurisdiction. *Bryant v. Jefferson Federal Savings and Loan Association,* D.C.Cir. 1974, 509 F.2d 511. This stream is not however without its countercurrents. A three-judge court in the Fourth Circuit has found state action in the non-judicial foreclosure proceeding available in North Carolina. *Turner v. Blackburn,* W.D. N.C., 389 F.Supp. 1250. Another district court has reached a similar conclusion. *Garner v. Tri-State Development Co.,* E.D.Mich.1974, 382 F.Supp. 377; *Northrip v. Federal National Mortgage Association,* E.D.Mich.1974, 372 F.Supp. 594, appeal docketed No. 74–1500, –1501, 6 Cir., May 1, 1974 (finding, however, no denial of due process).

First, there is no direct involvement of the state in the act complained of here.[5] No state official or agency participated in the creation of the power of sale, in the decision to exercise that power, or in the actual exercise of that power. At no time did the seller seek or rely on the aid of any arm or agent of the state. This absence of direct state involvement in the act by which the deprivation itself was accomplished sets this case apart from *Fuentes v. Shevin,* 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; *D. H. Overmyer Co. v. Frick Co.,* 1972, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124; *Swarb v. Lennox,* 1972, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138; *Sniadach v. Family Finance Corporation,* 1969, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349.

█ A sale under a deed of trust, to be an effective creditor remedy, must of course pass good title. The contract that provides for a power of sale thus relies,

ultimately, on the state's acknowledgement of the legal effect of the involuntary change in ownership brought about by the exercise of the power of sale. That the state merely recognizes the legal effect of such private arrangements does not convert them into state acts for Fourteenth Amendment purposes. See *Black v. Cutter Laboratories,* 1955, 351 U.S. 292, 76 S.Ct. 824, 100 L.Ed. 1188. This principle is implicit in our UCC cases. It is explicit in the decisions of other circuits holding that a secured party, to enable it to sell an automobile repossessed through self-help, and permitting the sale to convey good title, does not significantly implicate the state in the termination of the debtor's property interest. *See, e. g., Shirley v. State National Bank of Connecticut,* 2 Cir. 1974, 493 F.2d 739, 743 n. 5; *Gibbs v. Titelman,* 3 Cir. 1974, 502 F.2d 1107. Virtually all formal private arrangements assume, at some point, the supportive role of the state. To hold that the state, by recognizing the legal effect of those arrangements, converts them into state acts for constitutional purposes would effectively erase to a significant extent the constitutional line between private and state action and subject to judicial scrutiny under the Fourteenth Amendment virtually all private arrangements that purport to have binding legal effect.

█ The appellants' argument that Article 3810 is by itself constitutionally significant state involvement does not withstand examination. Article 3810 does not authorize the power of sale. Nor does it even codify the right to contract for and to exercise that power.

---

**5.** The court in *Turner v. Blackburn* found state action in what it termed "the direct participation by the clerk [of court] in the procedure by which the plaintiff was deprived of ownership and was threatened to be deprived of possession . . . ." 389 F.Supp. at 1258. Specifically, the court found, that although "the state has left to the trustee the functions of giving notice and conducting the public auction, the essentials thereof are subject to explicit verification by the clerk . . . ." Moreover, "the state has vested not in the trustee but in the

clerk the administration of the upset bid provisions". Finally, the court found that "the disposition of the proceeds of the *sale* must be approved by the clerk". Thus, the court concluded, the practice challenged was "a streamlined version of a judicial sale, with the clerk exercising by detailed *statutory* authority many of the supervisory powers inherent in a court of equity". 389 F.Supp. at 1258. The Texas statutes vest no comparable power and responsibility in any agent of the state.

Certainly it does not compel it. Its purpose and effect is to restrict the manner in which private parties, if they have bargained for the remedy, may exercise it. Article 3810 does not aid, support, or encourage foreclosures under powers of sale. It regulates exercise of those powers. Thus while Article 3810 is, of course, "direct state action", in the sense that it is a legislative regulation, the state may not be said to have thereby acted to deprive the debtor of his property interest. It has, in fact, acted, however ineffectually, to protect that interest.

## II.

The appellants also suggest that even if Article 3810 is not alone sufficient to implicate the state in these foreclosure practices, the state has become significantly involved through its comprehensive and detailed regulation of mortgage transactions and, more generally, of real property transactions. In *Pinnix* we explicitly rejected a similar argument that extensive state regulations of credit transactions implicated the state in self-help repercussions. We find this argument, as applied to non-judicial foreclosure, no more persuasive. The mere fact that the state has undertaken regulation of an activity does not mean that the activity so regulated, but not forbidden, is to be imputed to the state. As Judge Friendly has observed, "the state's choice to regulate to some degree, a choice it was free to make or not, does not compel it to exercise its powers to the utmost." The Dartmouth College Case and the Public-Private Penumbra 23.[6]

We find the appellants' reliance on *Public Utilities Commission v. Pollak*, 1952, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068, and *Moose Lodge No. 107 v. Irvis*, 1972, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627, to be misplaced. In *Pollak*, the administrative agency charged with supervision of the utility company had investigated the challenged practice and concluded that not only was it "not inconsistent with the public convenience, comfort, and safety" but on the contrary, that it "tends to improve the conditions under which the public rides." The state thus affirmatively placed the weight of its approval behind the practice complained of. The state has not cast the weight of its approval behind the practice challenged here. It has merely stayed its hand. No more support is to be derived from *Moose Lodge*. There the court also rejected the broad proposition that state regulation of liquor licenses implicated the state in discriminatory practices carried out by its licensees. The court did, however, at the same time hold that a state regulation that required licensees to "adhere to all the provisions of its constitution and by-laws" would be unconstitutional if applied to require a club to observe its own racially discriminatory by-laws. This aspect of *Moose Lodge* stands, we think, for the proposition that the power of the state may not be applied to require reluctant individuals to practice racial discrimination. This holding has no application to the facts of the case before us here. As *Jackson v. Metropolitan Edison* and *Moose Lodge* make clear, it is not the mere fact of regulation, but the character of the regulation, that may be significant for constitutional purposes: "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the state for purposes of the Fourteenth Amendment. Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so . . . . [T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison*, 419 U.S. at 350, 95 S.Ct. at 453. No such nexus is evident here. The regulation cited by the appellants does not betray a state partnership in the challenged activity or the kind of

---

6. Published as a supplement to the Texas Quarterly, Volume XII, No. 2 (1968).

symbiotic relationship that would permit us to impute to the state the responsibility for the challenged conduct. See *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45; *Wimbish v. Pinellas County*, 5 Cir. 1965, 342 F.2d 804; *Hampton v. City of Jacksonville*, 5 Cir. 1962, 304 F.2d 320, *cert. denied*, 371 U.S. 911, 83 S.Ct. 256, 9 L.Ed.2d 170; *McQueen v. Druker*, 1 Cir. 1971, 438 F.2d 781. We find in this regulation no significant link between the state and the actions which are the subject of the Barreras' complaint.

### III.

The appellants' final argument is that state action is present because foreclosure by sale is a "governmental", or more specifically, a "judicial" function. State action, has indeed, been found present "in the exercise by a private entity of powers traditionally exclusively reserved to the state." *See, e. g., Nixon v. Condon*, 1931, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (election); *Terry v. Adams*, 1953, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (election); *Marsh v. Alabama*, 1946, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (company town); *Evans v. Newton*, 1966, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (municipal park). *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 351, 95 S.Ct. 449. The appellants do not argue that the facts of these cases are significantly similar to those present here or that their "state function" argument directly derives support from the distinct lines of authority represented by those cases. Rather, they rely on *Hall v. Garson*, 5 Cir. 1970, 430 F.2d 430. There we considered a due process challenge to the self-help remedy created by a landlord lien statute enacted the previous year by the Texas legislature. It empowered a landlord to enter premises held by a tenant in default and to restrain the tenant's property found on the premises. Texas Acts 1969, 61st Leg., Ch. 686, p. 2008; codified as Art. 5238a, Tex.Rev.Stat.Ann. Prior to the enactment of that statute, Texas had recognized no such self-help remedy for landlords. Considering the "state action issue", we concluded that the state had delegated to private parties a power traditionally reserved for the sheriff or constable. We further explained our holding in *Hall* in *James v. Pinnix*, noting that the statute in *Hall* conferred on a private party a "roving commission" to levy goods of another to satisfy a "separate debt". Such a taking, we observed, "closely resembles a seizure and satisfaction of a judgment—a function traditionally performed by a sheriff or other state agent." 495 F.2d at 208. Here, by contrast, no state statute creates a right in mortgagees to proceed by non-judicial foreclosure; the right is created by contract. Moreover, the action taken by the appellee cannot be described as a function that has been traditionally the exclusive prerogative of the state.

Non-judicial foreclosure under a power of sale can certainly be characterized as a traditional remedy. Although it is not entirely clear when powers of sale first came into use in this country, they were sufficiently commonplace in 1774 to prompt New York to enact a statute to regulate their use. G. E. Osborne, Handbook on the Law of Mortgages, 726 (2d ed. 1970). In 1828 a New York court described the power of sale as "as ancient as the formation of the English government in this state." *Slee v. President, et al. Manhattan Co.*, N.Y.1828, 1 Paige 48, cited in Osborne at 729, n. 12. In Texas, non-judicial foreclosure under a power of sale in a deed of trust has been used and recognized for over one hundred years. *See*, for example, *Hipp v. Hutchett*, Tex.1849, 4 Tex. 20, 25. Courts in the United States consistently recognized these powers of sale as valid and enforceable. Justice Field, speaking for the Supreme Court, held, in 1895:

> There is nothing in the law of mortgages, nor in the law that covers what are sometime designated as trust deeds in the nature of mortgages, which prevents the conferring by the grantor or mortgagor in such instrument of the power to sell the premises described therein upon default in pay-

ment of the debt secured by it, and, if the sale is conducted in accordance with the terms of the power, the title to the premises granted by way of security passes to the purchaser upon its consummation by a conveyance."

*Bell Silver & Copper Mining Co. v. First National Bank*, 1895, 156 U.S. 470, 477, 15 S.Ct. 440, 443, 39 L.Ed. 497, 501. Somewhat later the Court noted that "[t]he validity of such a contractual power of sale is unquestionable." *Scott v. Paisley*, 1926, 271 U.S. 632, 635, 46 S.Ct. 591, 592, 70 L.Ed. 1123, 1125. Professor Durfee could, in fact, find only a single instance of judicial nullification of a power of sale. Durfee, Cases Mortgages 355 n. 23, cited in Osborne at 726 n. 11.

Certainly it cannot be said that termination of a debtor's equity of redemption was ever, in this country, the exclusive prerogative of the state. Foreclosure of the equity of redemption under contractual powers of sale have paralleled the foreclosure remedies provided by the courts. That the state has also involved itself in foreclosure practices, by providing first strict foreclosure and then later foreclosure by judicial sale, does not make the parallel private remedy state action. We agree with Judge Friendly in rejecting the notion that "the state can constitutionally allow private persons to offer services parallel to those it offers or could offer only if it requires them to conform to the same standards the Fourteenth Amendment imposes upon it." The Dartmouth College Case and the Public-Private Penumbra at 24. The Supreme Court, in *Evans v. Newton*, expressly disavowed any such interpretation of its "public function" holdings:

The range of governmental activities is broad and varied, and the fact that the government has engaged in a particular activity does not necessarily mean that an individual entrepreneur

or manager of the same kind of undertaking suffers the same constitutional inhibitions.

382 U.S. 296, 300, 86 S.Ct. 486, 489, 15 L.Ed.2d 373. Finally, as noted, this Court found no state action in self-help possession, even though self-help is clearly a remedy parallel and alternative to available judicial remedies.[7]

## IV.

Two variants of the "public function" argument pressed by the appellants remain to be discussed. One is the argument that "the lawful non-consensual taking of property is a uniquely governmental function." *Shirley v. State National Bank of Connecticut*, 2 Cir. 1974, 493 F.2d 739, 745 (dissenting opinion). This Court, like the Second Circuit, has implicitly rejected this position in upholding self-help repossession. We do not find significant in this context the distinction between the personal property subject to repossession under the UCC and the real property involved here, although we concede that it may often be the case that a deprivation of real property interests may, in most cases, impose a greater hardship than the loss of a chattel. Indeed, self-help repossession, when measured against the transfer of title accomplished through non-judicial sale, strikes us as bearing more of the earmarks of the force the exercise of which is traditionally confined to the sovereign, than does the transfer of title accomplished through a non-judicial foreclosure rule.

Finally, there is the argument that extensive regulation of an activity indicates that the regulated activity has been taken over as a "governmental function":

Underlying the principle in *Pollak* is a recognition that enterprises operating

---

7. *James v. Pinnix*, 5 Cir. 1974, 495 F.2d 206; *Brantley v. Union Bank and Trust Company*, 5 Cir. 1974, 498 F.2d 365, *cert. denied*, 43 U.S. L.W. 3306; *Caulderon v. United Furniture Company*, 5 Cir. 1974, 505 F.2d 950.

within heavily regulated areas of activity are performing public functions substantially affecting the public weal. The more pervasive is the regulation, the more likely is the regulated enterprise performing a function of the state. Demonstration of governmental interest, rather than the particular nature or history of the specific activity, is the public function indicium. When the activity not only falls within a regulated area, but also is the subject of a statute or administrative rule that expressly authorizes or mandates that activity by a regulated enterprise, private conduct pursuant to the statute or rule is deems to be state action, as *Moose Lodge No. 107 v. Irvis* implicitly acknowledges.

*Adams v. Southern California First National Bank*, 9 Cir. 1974, 492 F.2d 324, 341–42 (Judge Hufstedler dissenting from the denial of hearing en banc). Read broadly, this argument asserts, in essence, in the language of *Jackson*, that "all businesses 'affected with the public interest' are state actors in all their actions." *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 353, 95 S.Ct. at 455. The Supreme Court explicitly rejected that line of argument in *Jackson*. Read more narrowly, this argument has no application here, for, as we have noted, the state of Texas has not acted to expressly authorize or command non-judicial foreclosure.

## V.

In sum, we find no significant involvement of the state in non-judicial foreclosure. We are not blind to the fact that the Texas procedure is not immune from abuse. Nor do we mean to imply approval of the omission from Article 3810 of any requirement of personal notice to the debtor of the impending sale. The remedies for these shortcomings lie within the jurisdiction of the state's courts and legislature. We conclude that the decision of the district court must be affirmed.