Vivian WARREN, Appellant,

v.

GOVERNMENT NATIONAL MORT-GAGE ASSOCIATION et al., Appellees.

No. 79–1244.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1979.

Decided Jan. 2, 1980.

Rehearing Denied Jan. 29, 1980.

James L. Muller, Legal Aid of Western Missouri, Kansas City, Mo., for appellant.

Alan E. South, Crews, Milliard & South, Kansas City, Mo., for appellees.

Before ROSS and STEPHENSON, Circuit Judges, and McMANUS*, District Judge.

McMANUS, District Judge.

This is an appeal by Vivian Warren (plaintiff) from a final judgment in favor of Government National Mortgage Association (GNMA), holding no violation of her fifth amendment rights resulting from an extrajudicial foreclosure under a deed of trust. In her complaint, predicated principally under 28 U.S.C. § 1331 (federal question), plaintiff sought declaratory and mandamus relief.[1]

Plaintiff and her husband[2] were the owners of a residence in Kansas City, Missouri, which they purchased in August of 1966 from the United States Department of Housing and Urban Development (HUD). As part of the purchase price, they executed a note, secured by a deed of trust, to the Federal National Mortgage Association (FNMA). Thereafter, by Congressional Act, FNMA was converted into GNMA, a private corporation wholly-owned by the federal government. 12 U.S.C. § 1716 et seq. Plaintiff's note and deed of trust were transferred and assigned to GNMA. The deed of trust included a "Power of Sale" clause,[3] which in the event of default permitted the trustee to initiate an extrajudicial foreclosure sale in accordance with Missouri statutory procedures.[4]

In September of 1970, the successor trustee under the deed of trust—a private attorney retained by GNMA and not otherwise employed by the federal government—mailed a letter, first class not registered nor certified receipt, to the plaintiff and her husband, notifying them that GNMA deemed the payments on the note to be in default and that, as holder of the note, GNMA had elected to declare the entire principal due. The letter, therefore, demanded payment of the entire balance but contained no mention or threat of foreclosure by a trustee's sale. For whatever reasons,[5] plaintiff made no response to the letter.

Thereafter, GNMA foreclosed against plaintiff by causing the trustee to advertise

---

* The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

1. In her original complaint, filed on January 18, 1971, plaintiff also sought injunctive relief, joining as defendants a judge and constable of the Seventh District Magistrate Court of Jackson County, Missouri. By stipulation these two defendants were subsequently dismissed as parties and the claim for injunctive relief was omitted from plaintiff's pleadings upon which the action was tried.

2. Plaintiff and her husband were separated at the time the action was filed and he was not an original party. Thereafter, by amendment, he was made a party defendant as a necessary party who would not join as plaintiff. FRCP 19(a). Summons was issued and served, and the husband defaulted.

3. The deed of trust was executed on "FHA Form No. 2139m (Revised August, 1962)," which was then the standard printed form devised, approved and provided by the FHA for use in connection with federally insured loans on property situated in the State of Missouri. Compare 24 CFR § 203.17. The deed of trust form included the following pertinent language, referred to here as the "Power of Sale" clause:

"NOW, THEREFORE, . . . if default be made in the payment of said note herein provided . . . then the whole of said note and interest thereon to date of foreclosure shall become due and payable and this deed shall remain in force; and said Trustee or his successor . . ., at the request of the legal holder of the aforesaid note, may proceed to sell the property . . . at public vendue . . . to the highest bidder for cash, first giving twenty days public notice of the time, terms and place of sale and of the property to be sold by advertisement in some newspaper published in said Jackson County, Missouri, and upon such sale shall execute a deed conveying the property so sold to the purchaser thereof."

4. Missouri statutory law permits the extrajudicial foreclosure of deeds of trust, which in Missouri are commonly used as security agreements in lieu of mortgages. Rev.St.Mo. § 443.-410 et seq. (1969).

5. The record indicates that plaintiff had only a fifth grade education and neither she nor her husband could read. In a related case, she testified that she couldn't remember ever receiving the letter. Cf. Warren v. GNMA, 521 S.W.2d 441, 442 (Mo. en banc 1975).

in a newspaper, used almost exclusively for such legal notices, and to conduct a public sale, all in compliance with the power of sale clause in the deed of trust. GNMA was the purchaser at this sale.

After the foreclosure sale, plaintiff was notified by letter of the sale and demand was made for possession on or before October 26, 1970. She did not vacate the premises and GNMA brought an action for unlawful detainer in the Missouri Magistrate's Court, securing a judgment in that case on January 11, 1971. GNMA secured possession of the property by a writ of restitution on or about April 7, 1971.

Plaintiff's challenge rests essentially on her contention that she was denied fifth amendment due process rights to notice and hearing *prior to* the foreclosure sale.[6] We affirm on the basis of no federal government action.

 The Due Process Clause of the Fifth Amendment to the United States Constitution provides that: "No person shall . . . be deprived of . . . property, without due process of law; . . . " It applies to federal government not private action, *Public Utilities Comm'n*

*v. Pollak*, 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); while the fourteenth amendment due process clause applies to the states, *see, e. g., Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172–73, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). The standard for finding federal government action under the fifth amendment is the same as that for finding state action under the fourteenth amendment. *See, e. g., Geneva Towers Tenants Org. v. Federated Mortgage Investors*, 504 F.2d 483, 487 (9th Cir. 1974); *Ponce v. Housing Authority of Tulare County*, 389 F.Supp. 635, 648 (E.D.Cal.1975). That standard is that there must exist "a sufficiently close nexus between the [government] and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [government] itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

It is undisputed in this case that GNMA is a corporate entity, wholly-owned by the federal government, 31 U.S.C. § 846. It was created by the partition of the FNMA under the National Housing Act of 1968, 12

---

**6.** Plaintiff originally filed this suit alleging additionally that the Missouri statute authorizing such extrajudicial foreclosures violated the fifth and fourteenth amendments, and sought both a declaratory judgment voiding the sale and injunctive relief.

The parties stipulated that the courts of Missouri had never passed on the constitutional issues presented in the case, and the trial court determined that it was a proper cause for abstention and dismissed the case on that basis.

On appeal, this court affirmed the application of the abstention doctrine, but reversed the dismissal, directing the plaintiff to file a suit in state court, and directing that the case remain on the federal court docket until determination of the constitutional issues by the Supreme Court of Missouri. *Warren v. GNMA*, 443 F.2d 624 (8th Cir. 1971).

The Supreme Court of Missouri decided the fourteenth amendment issue against the plaintiff. *Warren v. GNMA*, 521 S.W.2d 441 (Mo. en banc 1975). The rationale for the decision is found in *Federal National Mortgage Association v. Howlett*, 521 S.W.2d 428 (Mo. en banc 1975) (decided the same day as the *Warren* case). The Missouri Court only discussed the fourteenth amendment constitutional question and stated:

"We hold that the foreclosure of the deed of trust on appellant's property was pursuant to the *contractual* provisions in the deed of trust and *not by authority of state law*. It follows that appellant's contention that state action was present on the theory that the power of sale exercised by the trustee was conferred by state statute is overruled." (Emphasis added).

The Missouri Supreme Court relied upon the reasoning and result in *Bryant v. Jefferson Fed. Sav. & Loan Assoc.*, 166 U.S.App.D.C. 178, 509 F.2d 511 (D.C.Cir. 1974). After the *Warren* decision, similar result was reached in cases involving extrajudicial foreclosures, *Charmicor, Inc. v. Deaner*, 572 F.2d 694 (9th Cir. 1978); *Northrip v. FNMA*, 527 F.2d 23 (6th Cir. 1975); and *Barrera v. Security Bldg. & Inv. Corp.*, 519 F.2d 1166 (5th Cir. 1975). These cases hold that the fact that state statutes regulate and govern the procedures to be followed in an extrajudicial foreclosure of real estate under power of sale clause contained in a mortgage or deed of trust does not establish that the foreclosure constituted state action.

Subsequent to the Missouri Supreme Court decision in *Warren*, this case was reactivated in the federal district court below, limited to the fifth amendment issues.

U.S.C. § 1716 *et seq.*, and is under the management and control of the Secretary of HUD, 12 U.S.C. §§ 1723(a) & 1723a(d). It has no capital stock, 12 U.S.C. § 1717(a)(2)(A). The economic benefits and burdens of its administration inure to the Secretary of the Treasury, 12 U.S.C. § 1722. Moreover, under 12 U.S.C. § 1717(b)(1), it is authorized to purchase, service, sell or otherwise deal in mortgages insured under 12 U.S.C. §§ 1701–1750g by the Federal Housing Authority (FHA).[7] Thus, GNMA is not only wholly-owned by the federal government but it also operates under federal government authority.[8]

To recognize these relational facts, however, does not end the federal government

action inquiry for, as was the case in *Public Utilities Comm'n. v. Pollak,* 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952), the deciding issue in this regard is not simply whether GNMA is a government-owned or authorized corporation; rather, it is whether as such GNMA's foreclosure action pursuant to the contractual power of sale clause in the deed of trust was so closely linked to federal government regulation that it can in actuality be viewed more as the action of the federal government itself than that of GNMA.[9] *Compare also Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 356–57 & n. 16, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

■ In approaching the latter issue, we emphasize that the power of sale clause as

7. GNMA is authorized to deal only in mortgages or deeds of trust insured under federal programs and is not, unlike FNMA, authorized to deal in "conventional mortgages". *Compare* 12 U.S.C. §§ 1717(a)(2)(A) & 1717(b)(1) *with* 12 U.S.C. § 1717(a)(2)(B) & 1717(b)(2). Thus, GNMA was authorized to deal in plaintiff's deed of trust in this case because that deed of trust was insured by FHA under § 203 of the National Housing Act, 12 U.S.C. § 1709.

8. Although the pertinent legislative history is somewhat unclear with respect to Congress' intent in bifurcating the old FNMA into two distinct corporate entities—FNMA and GNMA—in 1968, it is fairly certain that Congress was primarily motivated by "the emphasis of recent years of increased reliance on private sponsorship under our housing programs and participation by private enterprises in the financing and production of housing." H.R.Rep. No. 1585, 90th Cong., 2d Sess. *reprinted in* [1968] U.S.Code Cong. & Admin. News, pp. 2873, 2874. To that end, Congress decided to place the former FNMA's secondary market operation in a new privately owned corporation (with the continued designation FNMA) and its special assistance, management and liquidating functions in the new GNMA. *Id., U.S.Code Cong., supra,* at 2875; *see also id.,* at 2943–48, 3004–09.

Thus, if considered purely as a matter of statutory and organizational form the new GNMA could perhaps be viewed as more "governmental" than its counterpart FNMA. We, however, read the legislative history to indicate Congress' intent as being essentially to dissociate as far as possible the newly created entities, however characterized as to form, from the federal government in regard to their respective secondary mortgage market functions.

In short, in terms of substance as opposed to form, we view the functions served by GNMA

as being no more governmental than those served by the new FNMA, and accordingly we consider the cases holding the new FNMA's secondary mortgage market functions to be essentially "private action" as persuasive authority on the federal government action issue presented in this case. *Compare Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 358–60 (5th Cir. 1977); *Northrip v. FNMA,* 527 F.2d 23, 30–33 (6th Cir. 1975).

9. *Pollak* involved a challenge, on first and fifth amendment grounds, to the receiving and amplifying of radio programs on streetcars and busses owned and operated by Capital Transit Company in the District of Columbia under a franchise granted by Congress. Capital Transit was a privately-owned corporation established and authorized by Act of Congress. *See generally* 343 U.S., at 454 & n. 1, 72 S.Ct. 813. The Supreme Court reversed the appeals court's finding of constitutional violations, *assuming* however the existence of federal government action and explaining its rationale in the following terms:

"In finding this relation we do not rely on the mere fact that Capital Transit operates a public utility on the streets of the District of Columbia under authority of Congress. Nor do we rely upon the fact that, by reason of such federal authorization, Capital Transit now enjoys a substantial monopoly of street railway and bus transportation in the District of Columbia. We do, however, recognize that Capital Transit operates its service under the regulatory supervision of the Public Utilities Commission of the District of Columbia which is an agency authorized by Congress."

343 U.S., at 462, 72 S.Ct., at 820. *See also Jackson, supra,* 419 U.S., at 356 & n. 16, 95 S.Ct., 449.

contained in the deed of trust is a contractual power having its genesis in the deed of trust itself and as such exists independent of any statute otherwise governing it. *Compare, e. g., FNMA v. Howlett,* 521 S.W.2d 428, 432 (Mo. en banc) *appeal dismissed* 423 U.S. 909, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Warren v. GNMA,* 521 S.W.2d 441 (Mo. en banc 1975). As a party to the contract, and even though it was a governmentally-owned and authorized entity, GNMA had a right to resort to its contractual remedies just as a purely private entity had. *See Atlantic Mutual Ins. Co. v. Cooney,* 303 F.2d 253, 259 (9th Cir. 1962). *Accord Rex Trailer Co., Inc. v. United States,* 350 U.S. 148, 151, 76 S.Ct. 219, 100 L.Ed. 149 (1956).

■ We therefore are of the general opinion that mortgage foreclosures through power of sale agreements such as the one at issue here are not in and of themselves powers of a governmental nature. *Compare Northrip v. FNMA,* 527 F.2d 23, 31 (6th Cir. 1975); *Bryant v. Jefferson Federal Savings and Loan Assoc.,* 166 U.S.App.D.C. 178, 180–81, 509 F.2d 511, 513–14 (D.C.Cir. 1974). The trial court implicitly recognized this when it concluded that "a wholly-owned government agency can enforce a valid *contractual* provision for foreclosure without running afoul of the constraints of the Fifth Amendment, under all circumstances in which the foreclosure of the same contract by a private lender would be held not to violate the requirements of due process." *Warren v. GNMA, et al.,* Civil Action No. 19006–2, Memorandum Opinion and Judgment at p. 6 (W.D.Mo., February 12, 1979) [Designated Record on Appeal p. 117].

■ Plaintiff's major contention in this regard is that, all these considerations notwithstanding, federal government action is implicated in this case because the deed of trust form was specifically approved by HUD regulations, 24 CFR § 203.17, and therefore GNMA's foreclosure action pursuant to that deed of trust was by implication also specifically approved by HUD. If this court were to accept plaintiff's argument, every FHA guaranteed mortgage held either by GNMA, FNMA or a private lending agency would be placed in the same position of constitutional uncertainty simply by virtue of the fact that the mortgage form must also be approved by a federal agency under HUD regulations. Moreover, plaintiff's argument ignores the point that the central inquiry is not whether the form of the deed of trust is approved by federal regulations, but rather it is whether there exists a sufficiently close nexus between the government regulations and the challenged activity specifically at issue so that the challenged activity itself may be fairly treated as truly that of the federal government directly. *Cf. Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). *Accord, Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 358 (5th Cir. 1977), ["The government must be involved *with the activity* that causes the actual injury." (emphasis added)].

The challenged activity specifically at issue in this case is GNMA's extrajudicial foreclosure pursuant to the power of sale terms of the deed of trust, performed in accordance with Missouri laws. Plaintiff cites 24 CFR Pts. 200 & 203 generally as support for her argument that the Secretary of HUD, vicariously through GNMA, directly regulates GNMA's foreclosure procedures here. We find nothing in those general provisions, however, constituting direct federal government regulation of GNMA's servicing policies, including what methods it may use to protect its financial interest in the mortgage on default.

Concededly, the Commissioner of the FHA is required to approve the form of the mortgage or deed of trust before it is eligible for FHA insurance under 24 CFR § 203.17, but that regulation does not dictate what foreclosure provisions are to be included in the deed of trust. Indeed, 24 CFR § 203.17(b), (c) and (d) explicitly set forth certain provisions which must be included in any mortgage or deed of trust approved under subpart 203. If the Secretary of HUD had intended to regulate the specific *method* of foreclosure to be adopted by an investor in an insured mortgage, the

regulations would certainly have directly and expressly set forth that method in 24 CFR § 203.17.

Moreover, it is admitted in this case that the foreclosure of plaintiff's deed of trust was according to its own terms and under the extrajudicial foreclosure statutes of Missouri. There is nothing in the record to indicate that the powers otherwise exercisable by officers or employees of the federal government were in any way applied or used in this foreclosure of plaintiff's deed of trust. In fact, the foreclosure was conducted by the successor trustee strictly in accordance with Missouri law pursuant to his position as the contractually appointed trustee and not as a government employee.

Further, the only direct government involvement in the relations with the mortgagor or grantor of the deed of trust after default can be found in 24 CFR § 203.355. The regulation contemplates that if a claim is to be made under the mortgage insurance certificate then the mortgagee must take whatever steps, including foreclosure if and as permitted under state law, that are necessary to vest title to the property in either its name, or in the name of the commissioner. The rule, however, does not make explicit what specific foreclosure methods or procedures are to be adopted by the mortgagee. Thus, we view it as insufficient to conclude that the power of sale foreclosure methods at issue here were that of the federal government itself.

We conclude generally, therefore, that the federal government has neither mandated nor approved the method of foreclosure to be followed in the event of default; nor could it since the foreclosure procedures must accord with Missouri law. Since federal government regulation was not directly and substantially linked to the challenged foreclosure activity complained of by plaintiff and at issue here, no "federal government action" exists and plaintiff has no cognizable constitutional claim under the fifth amendment.

For the foregoing reasons, we affirm the judgment of the District Court. We need not reach waiver and other issues raised by plaintiff.

ROSS, Circuit Judge, concurring.

I concur in the determination that there was no federal government action for the reason that GNMA functions only in a traditionally nonsovereign capacity in providing secondary mortgages and enforcing them according to their terms. *Northrip v. Federal Nat. Mtg. Ass'n*, 527 F.2d 23 (6th Cir. 1975); *accord Roberts v. Cameron-Brown Co.*, 556 F.2d 356 (5th Cir. 1977).