Joshua WOLLMAN; David Wollman; Herman Wollman; Leonard Wollman; Jerry Hofer; Clarence Wollman; and Sam Wollman, Plaintiffs,

v.

POINSETT HUTTERIAN BRETHREN, INC.; and Clarmont Hutterian Brethren, Inc., Defendants.

No. Civ. 94–4043.

United States District Court, D. South Dakota, S.D.

Feb. 25, 1994.

Kirby J. Roberts, Horseshoe Bay, TX, Douglas R. Bleeker, Mitchell, SD, for plaintiffs.

Jeffrey T. Sveen, Aberdeen, SD, for defendants.

## MEMORANDUM OPINION and ORDER OF DISMISSAL

JOHN B. JONES, Chief Judge.

Plaintiffs have filed a complaint and an application for preliminary injunction. Plaintiffs are all former members of one or the other of the two Hutterian Brethren colonies named as defendants in this action. The defendant Hutterian colonies have each formed non-profit corporations under South Dakota law and have filed Articles of Incorporation and By–Laws. The dispute centers around action taken by the Hutterian colonies to expel the Plaintiffs from membership in the colonies.

In their complaint, Plaintiffs vaguely contend that each of them is an employee within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. §§ 1001–1461 (1988), and that each of the defendants is an employer within the meaning of ERISA. Plaintiffs further contend that they still retain property interests

in colony assets which are protected by the United States Constitution.

The Defendants have filed and served objections to the application for a preliminary injunction and ask therein that this action be dismissed.

The case came on for hearing on February 25, 1994. For the reasons stated herein, this action must be dismissed.

## FACTUAL BACKGROUND

The Hutterian Brethren Church takes its name from the founder of the church, Jacob Hutter, who was burned at the stake on February 20, 1536 in Innsbruck. In the United States and Canada, the church consists of various colonies which are allied with one of three conferences. The parties to this action are all aligned with the Schmiedleut Conference.[1]

These colonies adhere to the principles and tenets of the Hutterian belief which require the members of the church to live according to a communal way of life. Under this communal system, the members of an individual colony devote one hundred percent of their time and labors toward the colony and the church and receive no pay, wages, or salary. Membership is voluntary. Each member renounces the right to hold private property and no member is permitted to hold any property rights individually or any property rights in the colony or church property. Upon becoming a member, individuals must convey to the colony and the church all of the property that he or she possesses, as well as any property received by that individual in the future. Thereafter, members are not permitted to claim any right, title, or interest in that property.

Members agree to abide by the rules, regulations, directives, and authority of the presiding elder or elders of the church. Each member performs services which contribute to the welfare of the colony and the church to the extent of his age, ability, and physical condition.

If any member withdraws from the colony or the church, such member has no claim whatsoever upon the property or funds of the colony or church. All of the labors and services performed up to that time are considered either as compensation for the support and services provided by the colony and church to the member, or as a contribution by the member to the church for church purposes. In return, members are provided with all of the necessities of life, including food, clothing, shelter, medical care, etc.

The present dispute arose as a result of a division of views as to who is the true Senior Elder of the Schmiedleut Conference. Rev. Jacob Kleinsasser was its Senior Elder for many years, but after charges of fraud were made against him, he was voted out of office by majority vote and another Senior Elder was elected. Plaintiffs believe that the once the Senior Elder is elected he holds the post for life just as the Pope does in the Catholic Church and they continue to recognize Jacob Kleinsasser as their Senior Elder while Defendant colonies recognize his successor. This leadership dispute has caused considerable division among members of the Hutterian Brethren Church in the United States and Canada, with 56 colonies continuing to follow Rev. Kleinsasser and 87 colonies following his successor. The dispute in defendant colonies is being replicated in many other colonies in the United States and Canada.

## DISCUSSION

The threshold issue is whether this Court possesses jurisdiction to determine this action.

 Federal courts are courts of limited jurisdiction. *Insurance Corp. v. Compagnie Des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982); *Thomas v. Basham,* 931 F.2d 521, 522 (8th Cir.1991). The burden is on Plaintiffs to demonstrate that jurisdiction exists. *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 546–47, 106 S.Ct. 1326, 1333–34, 89 L.Ed.2d 501 (1986). Even if the parties concede the issue, jurisdiction will be raised sua

---

1. This conference is referred to throughout the pleadings as both Schmiedleut and Schmiedenleut. The Constitution of the Hutterian Brethren Church uses the term Schmiedleut and the Court will use that term as well.

sponte by a federal court if it appears jurisdiction is lacking. *Thomas*, 931 F.2d at 523. In this action, Defendants argue that this Court lacks jurisdiction.

The civil jurisdiction of federal district courts is limited to either actions raising a federal question, 28 U.S.C. § 1331, or actions involving diversity of citizenship, 28 U.S.C. § 1332.

At oral argument, Plaintiffs contended that federal jurisdiction existed under three theories—ERISA, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. Plaintiffs do not allege diversity of citizenship in the present action and, as illustrated below, this action does not involve a federal question. Upon this record, the Court must dismiss this action for lack of jurisdiction.

*ERISA Claim*

■ In an attempt to allege federal jurisdiction, Plaintiffs contend that this action involves ERISA. To determine whether an individual is an employee under ERISA, the common-law agency definition of that term is to be used. *Nationwide Mut. Ins. Co. v. Darden*, — U.S. —, —, 112 S.Ct. 1344, 1348–49, 117 L.Ed.2d 581 (1992). The unique situation presented by the facts of this case demonstrate that there is no employer-employee relationship present. The facts show that Plaintiffs were voluntary members of a communal religious organization. They were not hired as employees by the colonies and they received no wages from the colonies, nor did they participate in social security or federal withholding, unemployment insurance, worker's compensation, or any other program affecting the employment relationship.

■ In addition, even if the other requirements of ERISA were met, ERISA would not apply to this action. Defendants are church corporations exempt under 26 U.S.C. § 501(d) and therefore any alleged employee benefit plan under ERISA would be a church plan under 29 U.S.C. § 1002(33), and thereby exempt from ERISA.

■ Furthermore, both the excessive entanglement test enunciated in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) and the

Free Exercise Clause of the First Amendment prohibit this Court from inquiring into the relationship between individual members and the colony. *Scharon v. St. Luke's Episcopal Presbyterian Hosp.*, 929 F.2d 360 (8th Cir.1991).

*42 U.S.C. § 1983*

The Court finds that Plaintiffs' Complaint fails to allege an action under 42 U.S.C. § 1983.

■ The Fifth Amendment applies only to action by the federal government. *Warren v. Government Nat'l Mortgage Ass'n*, 611 F.2d 1229, 1232 (8th Cir.), *cert. denied*, 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980). No federal action is present in this case.

■ Similarly, the Fourteenth Amendment acts as a shield only against state action, but provides no protection against private conduct "no matter how unfair that conduct may be." *NCAA v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1988).

■ Plaintiffs allege that they "believe that the Defendant corporations are about to invoke actions by the State Courts of South Dakota and the duly elected Sheriff of Hamlin County, South Dakota to force Plaintiffs and their families to be physically removed from their homes without any compensation therefore." Even if such action would implicate the Fourteenth Amendment, the prospect of such action is merely speculative and fails to meet the requirements of standing. *See Lujan v. Defenders of Wildlife*, — U.S. —, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

*42 U.S.C. § 1985*

■ The Court finds that Plaintiffs' Complaint also fails to allege an action under 42 U.S.C. § 1985. At oral argument Plaintiffs' counsel contended that paragraphs 10, 11 and 12 of the Complaint alleged an action under 42 U.S.C. § 1985. Neither those paragraphs, nor the Complaint as a whole, allege any facts which would constitute a violation of 42 U.S.C. § 1985.

Under Plaintiffs' theory of the case, any property dispute would be a federal court action. Such is not the case.

*Religious Dispute*

■ Even if Plaintiffs were to file a new action which arguably alleged federal jurisdiction, the Court would be required to dismiss that complaint as well.

■ The First Amendment forbids civil courts from disturbing decisions of hierarchial polity made by the highest ecclesiastical tribunal of a church when such a resolution by civil courts would require extensive inquiry into religious law and polity. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151 (1976); *Drevlow v. Lutheran Church, Missouri Synod*, 991 F.2d 468, 471 (8th Cir.1993).

> In short, the First [Amendment] ... permit[s] hierarchial religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Milivojevich*, 426 U.S. at 724–25, 96 S.Ct. at 2387.

■ Plaintiffs' application for injunctive relief to prevent Defendants from expelling them from membership seeks relief which the First Amendment prevents this Court from granting.

The fact that the present case involves a property dispute does not absolve it of First Amendment scrutiny. When a church property dispute is brought in civil court "there is a substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs." *Id.* at 709, 96 S.Ct. at 2380.

> [T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern ... The First Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine.

*Id.* at 709–10, 96 S.Ct. at 2380–81 (internal quotations and citations omitted).

The Court is unable to envision any set of facts which would more entangle the Court in matters of religious doctrine and practice. The religious communal system present in this case involves more than matters of religious faith, it involves a religious lifestyle. An individual Hutterian colony member's entire life—essentially from cradle to grave—is governed by the church. Any resolution of a property dispute between a colony and its members would require extensive inquiry into religious doctrine and beliefs. It would be a gross violation of First Amendment and Supreme Court mandates for this Court to become involved in this dispute.

## CONCLUSION

For the reasons stated above, the Court finds that it lacks jurisdiction to consider Plaintiffs' complaint on its merits. The Court has no authority to consider Plaintiffs' application for a preliminary injunction and this action must be dismissed.

Therefore, upon the record herein,

IT IS ORDERED:

(1) That Plaintiffs' Application for Preliminary Injunction is denied.

(2) That Plaintiffs' ERISA, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 claims are all dismissed with prejudice; and Plaintiffs' property claims are dismissed without preju-

dice to raising them in state court proceedings.