324 F.3d 1091
 Margaret A. APAO, Plaintiff-Appellant,
v.
The BANK OF NEW YORK, as Trustee for Amresco Residential Securities Corporation Mortgage Loan Trust 1997-3 Under the Pooling & Servicing Agreement dated as 9/1/97; San Diego Home Loans, Inc., a California corporation, Defendants, and
ARM Financial Corporation, a California corporation, Defendant-Appellee.
 No. 01-16565.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 6, 2002.
 Filed April 4, 2003.
 
 Gary Victor Dubin, Dubin Law Offices, Honolulu, HI, for the plaintiff-appellant.
 R. John Seibert and Kenneth J. Mansfield, McCorriston Miller Mukai MacKinnon, LLP, Honolulu, HI, for the defendant-appellee.
 Appeal from the United States District Court for the District of Hawaii; David A. Ezra, District Judge, Presiding. D.C. No. CV-00-00557-DAE(KSC).
 Before: SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.
 SCHROEDER, Chief Judge.
 
 
 1
 Plaintiff-appellant Margaret Apao lost her home to a foreclosure and sale under procedures provided for in her mortgage contract and authorized under Hawaii's non-judicial foreclosure statute. See Haw. Rev.Stat. § 667-5. She filed this action in federal district court challenging that statute as violating the due process clause of the Fourteenth Amendment.
 
 
 2
 The district court dismissed the case for failure to state a claim because the sale was a purely private remedy and involved no state action. Apao appealed. In effect, she asks us to reconsider the round of decisions by this circuit and others a generation ago that upheld the constitutionality of similar statutorily authorized sale procedures. See, e.g., Charmicor, Inc. v. Deaner, 572 F.2d 694, 696 (9th Cir.1978); cf. Adams v. S. Cal. First Nat'l Bank, 492 F.2d 324 (9th Cir.1974). We conclude there has been no legal or historical development in the intervening years that would require a departure from prior authority. We therefore affirm.
 
 
 3
 Margaret Apao obtained an approximately $280,000 mortgage on her Honolulu residence in June of 1997 from defendant San Diego Home Loans, Inc. The mortgage agreement included the following power of sale .... clause:
 
 
 4
 19. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration.... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured.... If the default is not cured ... Lender, at its option ... may invoke the power of sale....
 
 
 5
 Such a contractual remedy is authorized under Haw.Rev.Stat. § 667-5, which provides in relevant part:
 
 
 6
 When a power of sale is contained in a mortgage, the mortgagee, or the mortgagee's successor in interest, or any person authorized by the power to act in the premises, may, upon a breach of the condition, give notice of the mortgagee's, successor's, or person's intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice once in each of three successive weeks (three publications), the last publication to be not less than fourteen days before the day of sale, in a newspaper having a general circulation in the county in which the mortgaged property lies; and also give such notices and do all such acts as are authorized or required by the power contained in the mortgage. Copies of the notice shall be filed with the state director of taxation and shall be posted on the premises not less than twenty-one days before the day of sale.
 
 
 7
 Three years into her mortgage, Apao notified San Diego Home Loans that she intended to cancel and rescind the mortgage and make no further payments because of perceived violations of the Truth and Lending Act, 15 U.S.C. § 1601. San Diego Home Loans then instituted a non-judicial foreclosure, hiring defendant-appellee ARM Financial Corporation to assist. ARM followed the provisions of the contract and sold the property in a foreclosure sale on August 22, 2000.
 
 
 8
 Apao immediately filed her complaint and styled it a class action. The district court granted the defendant-appellee's motion to dismiss in March of 2001 and entered final judgment in June of 2001. This appeal followed.
 
 
 9
 The Fourteenth Amendment provides: "No state shall ... deprive any person of life, liberty, or property, without due process of law." It thus shields citizens from unlawful governmental actions, but does not affect conduct by private entities. In Shelley v. Kraemer, 334 U.S. 1, 13-14, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), the Supreme Court held that what would otherwise be private conduct, i.e., placing a racially restrictive covenant in a deed, can violate the Fourteenth Amendment when state action in the form of a court order is sought to enforce its restrictive provisions.
 
 
 10
 Similarly, in cases involving foreclosures or seizures of property to satisfy a debt, the Supreme Court has held that the procedures implicate the Fourteenth Amendment only where there is at least some direct state involvement in the execution of the foreclosure or seizure. See Fuentes v. Shevin, 407 U.S. 67, 70-71, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (clerk of court made out writ of replevin authorizing seizure of property by sheriff); Sniadach v. Family Fin. Corp., 395 U.S. 337, 338-39, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (clerk of court issued summons at request of creditor's counsel, setting in motion garnishment of wages). More recently, in Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Court found state action where a creditor's ex parte petition for a writ of prejudgment attachment was executed by the county sheriff, sequestering the property pending adjudication of the claim. Id. at 924-25, 941-42, 102 S.Ct. 2744.
 
 
 11
 In contrast, in a case materially similar to this one, when a creditor enforced a lien through a purely private, non-judicial sale, the Supreme Court held that there was no state action, even though the lien was authorized by the state's legislative enactment of the Uniform Commercial Code. See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). In Flagg Bros., as in the case before us, the debtor argued first that the legislative grant of a private power of sale was a delegation of a traditional government function, and second, that the statutory authorization constituted state encouragement of such non-judicial remedies. The Supreme Court considered and rejected both arguments.
 
 
 12
 The Court held that legislative approval of a private self-help remedy was not the delegation of a public function. Id. at 158-60, 98 S.Ct. 1729. As a number of circuits have noted, self-help foreclosure remedies have existed since early in the common law, and thus one cannot say that the power of foreclosure is one traditionally belonging only to the government. See, e.g., Barrera v. Sec. Bldg. & Inv. Corp., 519 F.2d 1166, 1172-3 (5th Cir.1975); Bryant v. Jefferson Fed. Sav. & Loan Ass'n, 509 F.2d 511, 515 (D.C.Cir.1974). Our Circuit shares this view. See Adams, 492 F.2d 324, 330.
 
 
 13
 Flagg Bros. further held that the state's statutory authorization of self-help provisions is not sufficient to convert private conduct into state action. 436 U.S. at 164-65, 98 S.Ct. 1729. The statute neither encourages nor compels the procedure, but merely recognizes its legal effect. The state "has not compelled the sale of a [debtor's property], but has merely announced the circumstances under which its courts will not interfere with a private sale." Id. at 166, 98 S.Ct. 1729.
 
 The Fifth Circuit put it this way:
 
 14
 To hold that the state, by recognizing the legal effect of those arrangements, converts them into state acts for constitutional purposes would effectively erase... the constitutional line between private and state action and subject to judicial scrutiny under the Fourteenth Amendment virtually all private arrangements that purport to have binding legal effect.
 
 
 15
 Barrera, 519 F.2d at 1170.
 
 
 16
 When the constitutionality of such statutes was challenged in a series of cases beginning in the 1970s, six circuits, including our own, found that the provisions did not violate the Fourteenth Amendment. They held there was no state action in either the availability of such private remedies or their enforcement. See Mildfelt v. Circuit Court of Jackson County, 827 F.2d 343, 346 (8th Cir.1987) (finding no state action where power of sale was conferred by contract and merely recognized by statute); Charmicor, Inc. v. Deaner, 572 F.2d 694, 696 (9th Cir.1978) (finding no state action where plaintiffs challenged Nevada's non-judicial foreclosure statute on due process grounds); Levine v. Stein, 560 F.2d 1175, 1176 (4th Cir.1977) (concluding that foreclosure procedures entail insufficient state action to support constitutional challenge); Northrip v. Fed. Nat'l Mortg. Ass'n, 527 F.2d 23, 28-29 (6th Cir.1975) (finding no state action in non-judicial foreclosure, notwithstanding involvement of sheriff and register of deeds); Barrera v. Security Bldg. & Inv. Corp., 519 F.2d 1166, 1174 (5th Cir.1975) (finding no state action); and Bryant v. Jefferson Federal Sav. & Loan Ass'n, 509 F.2d 511, 513 (D.C.Cir.1974) (finding no significant state action in non-judicial foreclosure procedures). Those decisions have not been seriously questioned in the intervening years.
 
 
 17
 Appellant attempts to distinguish Charmicor, the controlling case in our circuit, on the ground that the foreclosure sale there was conducted by a neutral trustee, see 572 F.2d at 695, while the sale here was conducted by a self-interested lender. The distinction is not material in this case. Any procedural concerns that may arise from use of a self-interested foreclosure agent do not relate to the threshold, and here dispositive question as to whether there was state action. In Charmicor, we rejected a due process challenge to Nevada's non-judicial foreclosure statute because there was insufficient state involvement to attribute the foreclosure to the state itself. That conclusion is even more strongly compelled here, where the state did not confer the power of sale, but merely authorized the parties to contract for the express terms of foreclosure upon default.
 
 
 18
 Appellant suggests that because the residential mortgage business is regulated by both state and federal laws for the interests of the consumer, any action of the mortgage lenders is converted into state action. We have rejected that argument as well. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." Jackson v. Metro. Edison Co., 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Our court has explained the reason: "Statutes and laws regulate many forms of purely private activity, such as contractual relations and gifts, and subjecting all behavior that conforms to state law to the Fourteenth Amendment would emasculate the state action concept." Adams, 492 F.2d at 330-31. Thus, contrary to Apao's assertions, the development of the extensively regulated secondary mortgage market does not convert the private foreclosure procedures at issue here into state action.
 
 
 19
 What is required for state action in this area is "overt official involvement" in the enforcement of creditors' remedies. Thus, in Flagg Bros., where there was a "total absence of overt official involvement," 436 U.S. at 157, 98 S.Ct. 1729, there was no state action. There is none here. While the bar for state action is low, see Shelley v. Kraemer, 334 U.S. at 13-14, 68 S.Ct. 836, non-judicial foreclosure procedures like Hawaii's nevertheless slip under it for want of direct state involvement.
 
 
 20
 AFFIRMED.