Harrison BULLOCK, Plaintiff,

v.

RESOLUTION TRUST CORPORATION;
Jane W. Haddock; Kislak Realty Equi-
ties, Inc.; CS First Boston Mortgage
Capital Corporation; Mortgage Proper-
ties Corporation; and GE Capital Asset
Management Corporation, Defendants.

Civil Action No. 3:94–cv–347WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 9, 1995.

John M. Mooney, Jr., Jackson, MS, for plaintiff.

· Gregory K. Davis, Tylvester O. Goss, Davis, Goss & Williams, Jackson, MS, Lynda Carol Robinson, Robinson Law Firm, P.A., Jackson, MS, for Resolution Trust Corporation.

James E. Lambert, Lambert & Bailey, Jackson, MS, for Jane W. Haddock.

Alan ·Walter Perry, Forman, Perry, Watkins & Krutz, Jackson, MS, for Kislak Realty Equities, Inc.

W. Wayne Drinkwater, Jr., Jackson, MS, Laura Limerick Gibbes, Lake, Tindall & Thackston, Jackson, MS, for CS First Boston Mtg. Capital Corporation, Mortgage Properties Corporation.

Kathryn H. Hester, Watkins, Ludlam & Stennis, Jackson, MS, for G.E. Capital Asset Management Corporation.

Alan Walter Perry, Forman, Perry, Watkins & Krutz, Jackson, MS, for J.I. Kislak Mortgage Corp.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court are two motions filed pursuant to Rule 56(b),[1] Federal Rules of Civil Procedure: (1). defendant GE Capital Asset Corporation's motion for partial summary judgment on plaintiff's claims based upon the United States Constitution and upon Title 42 U.S.C. § 1983;[2] and (2) the joint motion for summary judgment on all of plaintiff's claims brought by defendants GE Capital Asset Corporation, CS First Boston Mortgage Capital Corporation, Mortgage Properties Corporation, and Jane W. Haddock.[3] The former motion attacks plaintiff's § 1983 claims, arguing that these claims should be dismissed because the facts undergirding this lawsuit are conspicuously absent of any "state action," a necessary prerequisite for any cause of action predicated upon § 1983. Defendants' latter motion seeks dismissal of all of plaintiff's claims premised upon the theories of res judicata and collateral estoppel. Defendants juxtapose a resolved state court action between the parties herein with the instant federal lawsuit and conclude that the two actions meet the identity tests for application of res judicata and/or collateral estoppel and that, accordingly, this lawsuit should be dismissed because plaintiff lost on these same facts and urgings in that state court litigation. Plaintiff Harrison Bullock opposes both motions; however, persuaded by defendants' arguments on the law and undisputed facts, this court grants summary judgment to the defendants on both motions for the reasons which follow.

## I. BACKGROUND

On November 16, 1979, William B. Passons and Patricia Ann Passons borrowed Thirty One Thousand Six Hundred Dollars ($31,-600.00) from Unifirst Federal Savings and Loan Association (hereafter "Unifirst"). The indebtedness was evidenced by a Note signed by Mr. and Mrs. Passons. The Note was secured by a deed of trust. The property subject to the deed of trust was the Passons' home located at 224 West Lakeview Drive, Clinton, Mississippi.

A Chattel Deed of Trust from William B. Passons and Patricia A. Passons to plaintiff Bullock was recorded in the Chancery Court of Hinds County on January 6, 1988. The Chattel Deed of Trust was secured by the Clinton property. Plaintiff claims an interest in the Clinton property pursuant to the transactions relating to the Chattel Deed. of Trust and Warranty Deed.

On August 10, 1989, the Resolution Trust Corporation (hereafter "RTC") was appointed receiver of Unifirst Bank for Savings, F.A., Jackson, Mississippi, ("Old Unifirst")

---

1. Rule 56(b) of the Federal Rules of Civil Procedure provides:
 (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Title 42 U.S.C. § 1983 provides in pertinent part as follows:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Colum-

bia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. Earlier, defendants Resolution Trust Corporation and Kislak Realty Equities, Inc., were voluntarily dismissed from this action by plaintiff.

for the purpose of liquidation. On August 10, 1989, a Federal Charter was issued to Unifirst Bank for Savings, A Federal Savings and Loan Association, Jackson, Mississippi, ("New Unifirst"). On August 10, 1989, the RTC was appointed Conservator for New Unifirst. On June 14, 1990, RTC, as Conservator, was replaced by RTC, as Receiver, for New Unifirst.

Plaintiff made payments in 1989 and 1990 on the Passons' mortgage note. The last record of any mortgage payment on the Passons' account occurred on March 19, 1990. A draft in the amount of Three Hundred Forty Nine Dollars ($349.00) was paid to New Unifirst on that date. The Passons' mortgage note was never transferred into plaintiff's name.

J.I. Kislak Mortgage Corporation (hereafter "Kislak") serviced the Passons' mortgage for RTC, as Receiver of New Unifirst. Plaintiff was advised that Kislak was servicing the Passons' mortgage. In 1991, Bullock received a Declarations Page from Transamerica Premier Insurance Company which listed J.I. Kislak Mortgage Service in the Mortgagee Clause.

Plaintiff received a document dated August 29, 1991, stating, "Unifirst Bank for Savings no longer services loans. All loans have been sold or transferred to other institutions...." The document indicates that it is from "Resolution Trust Corporation, Receiver for Unifirst Bank for Savings."

On November 13, 1991, RTC, as Receiver for New Unifirst, assigned the Passons' Note and Deed of Trust to First Boston Mortgage Capital Corporation (hereafter "First Boston"). First Boston assigned the Passons' Note and Deed of Trust to Mortgage Properties Corporation on October 19, 1992. GE Capital Asset Management Corporation (hereafter "GE Capital") serviced the mortgage for Mortgage Properties Corporation.

On December 17, 1992, a Notice of Default and Demand for Payment was sent to plaintiff by GE Capital. The Notice stated that the mortgage note was in arrears in the amount of Eleven Thousand Seven Hundred Seventy Four Dollars and Seventy Three Cents ($11,774.73). On January 11, 1993, plaintiff wrote GE Capital a letter in response to the December 17, 1992, letter. On March 1, 1993, GE Capital responded to plaintiff, providing him with the requested information. Plaintiff wrote GE Capital a letter on March 8, 1993. This letter mentions a "public auction of said property."

On October 19, 1992, Mortgage Properties Corporation substituted John C. Underwood, Jr., as Trustee under the Deed of Trust on the Clinton property. On February 10, 1993, Mr. Underwood sent a letter to plaintiff, via certified mail, with a copy of the Substituted Trustee's Notice of Sale. The letter states that the property is scheduled to sell on March 15, 1993. On March 15, 1993, defendant Jane W. Haddock, the highest bidder, purchased the property at foreclosure and acquired title to the real property in question by virtue of a Substituted Trustee's Deed recorded in the Office of the Chancery Clerk of the First Judicial District of Hinds County, Mississippi, Deed Book 4106 and Page 514. Upon acquiring title and taking possession of the property, Haddock succeeded to the interests of First Boston and Mortgage Properties.

Holding a second lien on the property, Bullock claims that as a result of not having received notice of the foreclosure he has been damaged in both his personal and business capacities. Plaintiff Harrison Bullock prior to the time of the foreclosure utilized the property as a storage facility.

Immediately following the foreclosure, on March 26, 1993, Bullock filed suit in state court against Haddock challenging the correctness of the foreclosure and seeking an injunction, possession of the property, and damages. After Haddock answered and after the state judge had heard evidence on the matter, the state judge on August 23, 1995 (Memorandum Opinion and Order), and September 26, 1995 (Final Judgment), found against Bullock. Meanwhile, back on June 13, 1994, Bullock had filed this federal lawsuit against Haddock, adding the defendants GE Capital Asset Corporation, CS First Boston Mortgage Capital Corporation, and Mortgage Properties Corporation. Bullock brings

the instant lawsuit pursuant to Title 28 U.S.C. § 1331 [4] and § 1343(a)(3).[5]

## II. FINDINGS OF FACT

### A. The State Lawsuit

On March 15, 1993, defendant GE Capital foreclosed on the deed of trust secured by the property at 224 West Lakeview Drive, Clinton, Mississippi. Plaintiff Bullock claims an interest in that property as a junior lienholder. Defendant Jane W. Haddock, the highest bidder at the foreclosure sale, took possession of the property, changed the locks, and moved the personal property in the house to a storage facility.

Harrison Bullock returned to the property a week later and, finding the locks changed and the personal property gone, filed a complaint against Haddock in the Hinds County, Mississippi, Chancery Court (Civil Action No. 151,694) and obtained a temporary restraining order without notice against Haddock. In his Chancery Court lawsuit filed March 26, 1993, Bullock alleged: that defendant Haddock was not entitled to possession of the premises; that Bullock had been deprived of the premises and his personal property in the premises as a result of the foreclosure; that Haddock had removed and converted personal property and business records and inventory valued in excess of $100,000 from the premises; that defendant Haddock has refused to return or divulge the location of items that had been removed from the premises; that Bullock has been unable to operate his business as a result of the foreclosure; that Bullock's business reputation and business relationships have been damaged as a result of the foreclosure; that as a result of these injuries, Bullock is entitled to actual and compensatory damages of $250,000, punitive damages, and attorney fees; that Bullock is entitled to temporary and permanent injunctive relief enjoining

Haddock from coming onto the premises and enjoining her from exercising any right of ownership over the premises; and that Bullock is entitled to possession of the premises.

In her answer to the chancery complaint, Haddock asserted that the property was hers because she had been the highest bidder at the foreclosure sale, that the foreclosure had been conducted in accordance with all legal requirements, and that she had taken title to the property through a Substituted Trustee's Deed of Trust.

At the April 15, 1993, Chancery Court hearing, seeking to discredit the validity of the trustee's sale, Bullock claimed that he had been negotiating with GE Capital for purchase of the property and that he had not received notice of the foreclosure sale as required by the Deed of Trust. Bullock testified that during these negotiations with GE Capital prior to the foreclosure he had made an offer to purchase the outstanding mortgage loan for $15,000. Bullock's counsel stated that this evidence was being presented to "lay the predicate" regarding the validity of the foreclosure, whether the mortgage holder complied with the notice provisions of the deed of trust and whether the foreclosure sale was invalid or improper.

At the close of the injunction hearing, the Chancellor affirmed the stipulation of the parties that: certain personal property belonging to Bullock would be returned to him; found that the real property was used merely as a storage facility rather than as Bullock's residence as he had claimed; denied Bullock's request for a preliminary injunction against Haddock; and returned the real property to Haddock's possession. The Chancellor then set a date for the trial of the case on its merits.

In February 1995, preparing for a trial on the merits, Haddock filed a second amended

---

**4.** Title 28 U.S.C. § 1331 provides:

The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States.

**5.** Title 28 U.S.C. § 1343(a)(3) provides:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

answer to the state chancery complaint and counterclaimed against Bullock for removal of a cloud on her title to the property, contending that a cloud to title was occasioned by the state and federal court actions in which Bullock claimed title to the property because the foreclosure sale was invalid. Haddock also requested that the title to the property be confirmed in her and that she be awarded damages for slander of title.

Following the trial on the merits of the chancery court action, Bullock submitted the following proposed findings of facts and conclusions of law to the chancery court, asking the court to find that: Bullock did not receive notice of the foreclosure sale; a person in possession of property, who has been negotiating with the mortgagee regarding the mortgage, (as was Bullock), is entitled to notice of foreclosure; the failure to provide proper notice invalidated the foreclosure; defects in the notice of the foreclosure impaired Haddock's title to the property and rendered it void; full title to the property should be returned to Bullock; Bullock was entitled to an award of $51,636.25 for personal property that was taken and never returned to him; Bullock was entitled to damages for lost profits because he was denied access to business inventory located on the premises; the delay in returning Bullock's business inventory to him following the foreclosure resulted in lost business profits on business ventures in Mexico and Chicago; and that Bullock was entitled to an award of punitive damages and attorney fees.

The Hinds County Chancellor made the following findings of fact and conclusions of law:

a. Harrison Bullock was not a party to the Deed of Trust which was foreclosed on March 15, 1993; Bullock had not assumed the mortgage loan which was secured by the Deed of Trust; and Bullock was not in privity with the owner and the holder of the Deed of Trust;

b. No payments were made on the mortgage debt secured by the Deed of Trust after March 1990, and $11,774.73 was due and owing as of December 1992;

c. The owner and holder of the mortgage loan in favor of Unifirst Federal Savings and Loan Association was entitled to foreclose by power of sale described in the Deed;

d. The foreclosure sale was conducted and completed in the time and manner prescribed by law in the State of Mississippi, and Jane W. Haddock, as the highest bidder at the sale, was a bona fide purchaser for value;

e. Bullock received actual notice of the foreclosure sale, even though he was not entitled to notice of the foreclosure sale under state law, the Deed of Trust, or any equitable or legal principles;

f. Jane W. Haddock was entitled to possession of the property on March 15, 1993. Haddock was entitled to have the title to the property confirmed in her. Haddock's act of moving the personal property and business inventory to the storage facility was a reasonable step to take under the circumstances and did not constitute an act of conversion;

g. Bullock did not establish that Jane Haddock's actions in bagging Bullock's belongings and placing certain of his business inventory and personal property in a self storage facility constituted a conversion; and

h. Bullock failed to establish damages for loss of profits and business reputation. Furthermore, Bullock failed to establish that he was damaged either by lost business opportunity, loss of business reputation, loss of personal property, or loss of business inventory.

The Chancellor's opinion was rendered on August 23, 1995. She entered a judgment reflecting these findings on September 26, 1995.

### B. *The Federal Lawsuit*

After the Chancellor's denial on April 15, 1993, of Bullock's request for injunctive relief, on June 13, 1994, Bullock filed a second lawsuit arising from the March 15, 1993, foreclosure, a fifteen count complaint in this court against Jane W. Haddock and Resolution Trust Corporation, Kislak Realty Equities, Inc., CS First Boston Mortgage Capital Corporation, Mortgage Properties Corporation, and GE Capital Asset Management

Corporation. Subsequently, defendants Resolution Trust Corporation and Kislak Realty Equities, Inc., were voluntarily dismissed by plaintiff Bullock.

Bullock's federal court complaint includes claims for deprivation of property rights pursuant to the United States Constitution and Title 42 U.S.C. § 1983, and claims for damages based on the actions of defendant GE Capital prior to the March 15, 1993, foreclosure and the actions of defendant Haddock following the foreclosure. Bullock's claims against defendants First Boston and Mortgage Properties are based primarily on a theory of agency—that First Boston and Mortgage Properties are the principals of GE Capital and as principals are liable for the acts of their purported agent GE Capital.

All of the claims that Bullock asserts in the federal court action *sub judice* arise from his contention that he was not provided notice of the March 15, 1993, foreclosure, that he was engaged in negotiations with GE Capital at the time of the foreclosure, and that his personal property and business inventory were ransacked and detained following the foreclosure.

As evident by the court's earlier discussion of Bullock's state court lawsuit, all of these issues were raised therein. The alleged failure to provide proper notice of the March 15, 1993, foreclosure was raised in Bullock's chancery complaint, was the subject of testimony at the chancery court trial, and was the subject of numerous proposed findings that Bullock submitted to the chancery court. The same purported negotiations with GE Capital were the subject of testimony at the preliminary injunction hearing and the trial on the merits and were the subject of proposed findings of fact that Bullock submitted to the Chancellor. The alleged "ransacking" and detention of his personal property and business inventory following the foreclosure were similarly raised in the chancery complaint, were the subject of testimony at the

chancery court trial, and were submitted to the chancery court for consideration.

At the trial on the merits of Bullock's chancery court case which was set for hearing on March 21, 1995, Bullock asked the State Court Chancellor not to decide the issue of Haddock's title, but rather to transfer that part of the chancery court case to the pending federal court action. The Chancellor denied that request. Consequently, the issue of the March 15, 1993, foreclosure and Haddock's title to the property were tried at length and were submitted to the chancery court for consideration. The Chancellor ruled against Bullock on each of his claims and found that the March 15, 1993, foreclosure was legal and valid, that title to the property should be confirmed in Haddock, that Bullock had not suffered any damages as a result of the foreclosure, and that Bullock should forfeit the injunctive bond posted with the chancery court. As earlier stated, Bullock presents these same claims in his federal court action.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. Federal Rules of Civil Procedure 56(c);[6] *Gunaca v. State of Texas,* 65 F.3d 467, 469 (5th Cir.1995); *Douglass v. United Services Automobile Association,* 65 F.3d 452, 458 (5th Cir.1995); *Hightower v. Texas Hospital Association,* 65 F.3d 443, 446 (5th Cir.1995).

 The moving party carries the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The

---

6. Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part that:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, togeth-

er with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

burden then shifts to the non-movant to the motion who then has the burden of coming forward with evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. at 323–25, 106 S.Ct. at 2553. The non-movant cannot merely rely on the pleadings but must designate specific facts showing that there is a genuine issue for trial. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions or by only a scintilla of evidence." *Little,* 37 F.3d at 1075.

### B. *Res Judicata*

■ A prior state court decision must be given the same preclusive effect in a subsequent federal action as it would be given by the courts of the state from which the decision arose. *See Gates v. Walker,* 865 F.Supp. 1222, 1236 (S.D.Miss.1994), *aff'd* 62 F.3d 394 (5th Cir.1995), *citing Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). If Bullock's claims would be precluded under Mississippi law by the principles of *res judicata* and collateral estoppel, these claims may not be relitigated here.

■ Mississippi law provides that all claims which have been litigated in a prior lawsuit, as well as all claims which should have been litigated in the prior lawsuit, are barred from relitigation under the doctrine of *res judicata. See Johnson v. Howell,* 592 So.2d 998, 1002 (Miss.1991); *Riley v. Moreland,* 537 So.2d 1348, 1354 (Miss.1989); *Dunaway v. W.H. Hopper & Assoc.,* 422 So.2d 749, 751 (Miss.1982). A party may not elude the bar of *res judicata* by alleging a new legal theory of recovery in a second lawsuit where the underlying facts and circumstances are the same as those involved in the first lawsuit. *Walton v. Bourgeois,* 512 So.2d 698, 702 (Miss.1987); *DeFoe v. Great Southern National Bank,* 547 So.2d 786, 788 (Miss. 1989).

■ Under Mississippi's jurisprudence, in order for *res judicata* to apply, four identities must be present between the two lawsuits: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality or character of the person against whom the claim is made. *Gates,* 865 F.Supp. at 1237.

For the following reasons, the court finds that all of these identities have been met here and that Bullock's claims cannot be relitigated in this lawsuit.

### (1) *Identity of the Subject Matter of the Action.*

■ Identity of the subject matter of the action exists where both lawsuits arise out of or address the same subject matter. *See, e.g., Gates,* 865 F.Supp. at 1237.

■ Both the chancery court suit and the instant federal court action arise out or address the foreclosure on March 15, 1993, of the deed of trust secured by property at 224 West Lakeview Drive, Clinton, Mississippi. Accordingly, this court finds that the subject matter prong is satisfied.

### (2) *Identity of the Cause of Action.*

■ In determining whether identity of the causes of action exists, the phrase "cause of action" is not to be strictly construed, but rather should be interpreted to mean both the right to institute and carry on an action and the facts giving rise to the action. *See Riley,* 537 So.2d at 1354; *Grenada Bank v. Petty,* 174 Miss. 415, 164 So. 316, 318 (1935). Identity of the causes of action exists where there is a commonality in the "underlying facts and circumstances upon which a claim is asserted and relief sought in the two actions." *Riley,* 537 So.2d at 1354, citing *Walton,* 512 So.2d at 701. Where "the underlying facts and circumstances giving rise to the plaintiff's claim [in the federal action] are the same as the ones plaintiff raised in [the prior] state court action, then identity of cause of action is present." *Gates,* 865 F.Supp. at 1238.

■ A comparison of the facts and circumstances alleged by plaintiff Bullock in his chancery court action with those alleged by plaintiff Bullock in the instant action clearly

establishes that identity of the cause of action exists here. Both of these lawsuits arise out of the facts and circumstances surrounding the March 15, 1993, foreclosure. In the chancery court action, all of Bullock's claims were bottomed upon his assertions that GE Capital failed to provide him notice of the March 15, 1993 foreclosure; that he was negotiating with GE Capital at the time of the foreclosure; and that Haddock damaged him by bagging and moving his personal property and business inventory.

Bullock's alleged "negotiations" with GE Capital concerning the outstanding mortgage were the subject of testimony at the temporary injunction hearing and at the trial on the merits and were the subject of proposed findings of fact and conclusions of law submitted to the Chancellor by Bullock. GE Capital's alleged failure to provide proper notice of the March 15, 1993, foreclosure was raised in Bullock's chancery complaint, was the subject of testimony at the chancery trial, and was the subject of numerous proposed findings submitted by Bullock to the chancery court. The alleged "ransacking" and detention of Bullock's personal property and business inventory following the foreclosure were similarly raised in the chancery complaint, were the subject of testimony at the chancery trial, and were submitted to the chancery court for consideration.

Bullock's claims in this federal action also arise from his contention that he was not provided notice of the foreclosure, that he was engaged in negotiations with GE Capital, and that his personal property and business inventory were ransacked and detained following the foreclosure. Thus, the facts and circumstances underlying both Bullock's chancery court suit and his federal court action are the same.

A commonality also exists between the relief sought by Bullock in the chancery and federal actions. In this federal complaint, Bullock has requested that the foreclosure sale be set aside; that title to and possession of the property be restored to him; and that he be awarded actual and compensatory damages for loss of real and personal property and business inventory, lost business profits and damage to business reputation,

punitive damages and attorney fees. Bullock requested identical relief in the chancery court action. Indeed, in his federal court complaint, Bullock himself noted that he had filed a prior chancery court proceeding involving "these acts and conduct as alleged [in the federal court complaint] herein."

Given the common factual basis for all claims asserted in Bullock's chancery and federal court actions, this court finds that the identity of cause of action has been met.

### (3) *Identity of Parties.*

Bullock's state chancery court action was instituted against Jane Haddock, the successor in interest under the deed of trust to defendants Mortgage Properties and First Boston, who are alleged to be the principals of defendant GE Capital. Defendant Haddock is a defendant in both the chancery court action and this federal court suit.

Although the remaining defendants in the federal action may not have been named as parties to the chancery action, they still meet the identity of parties requirement for *res judicata* since there is a sufficient identity among all of the defendants.

■ Mississippi law requires that the parties to the two actions must be substantially identical in order for *res judicata* to apply. " 'Substantially identical' does not mean 'exactly the same.' " *Gates,* 865 F.Supp. at 1239.

> Privity, succession of interest, and relationship are terms used to express the identity of parties required for the application of *res judicata.*

*Id.,* citing *State, ex rel. Moore v. Molpus,* 578 So.2d 624, 640 (Miss.1991); *Walton,* 512 So.2d at 701. *See also Russell v. SunAmerica Securities, Inc.,* 962 F.2d 1169, 1173 (5th Cir.1992) (recognizing privity as a broad concept which requires court to "look to the surrounding circumstances to determine whether claim preclusion is justified.").

■ It is undisputed that, as a result of the foreclosure, Haddock succeeded to the interests of First Boston and Mortgage Properties under the deed of trust and that the deed of trust was assigned to her follow-

ing her purchase of the property at the foreclosure sale. Jane Haddock is a direct successor to the interests of Mortgage Properties and First Boston under the deed of trust.

■ Mississippi law recognizes that a privity of interest exists among parties who are successors in interests to real estate. *See Walters v. Rogers,* 222 Miss. 182, 75 So.2d 461, 462 (1954) (recognizing that privity relationship can be created by any conveyance or transfer of an interest in real property that would result in transfer of possession). *See also Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 188 (5th Cir. 1990) (applying Texas law, but recognizing that nonparty to original litigation is in privity with party for *res judicata* purposes if he is successor in interest to party's interest in property).

■ Bullock has steadfastly maintained throughout this action that GE Capital was acting as an agent of First Boston and/or Mortgage Properties at all times related to the events at issue surrounding the foreclosure. A commonality of identity or interest exists among parties alleged to be engaged in a principal-agent relationship. *See First Jackson Securities Corp. v. B.F. Goodrich Co.,* 253 Miss. 519, 176 So.2d 272, 278 (1965) (defining agent as one who stands in the shoes of the principal and acts as the principal's alter ego). *See also E.A. Prince & Son, Inc. v. Selective Ins. Co. of Southeast,* 818 F.Supp. 910, 915 (D.S.C.1993) (recognizing privity relationship between principal and agent and that *res judicata* precludes action against principal when plaintiff's prior suit against agent was unsuccessful); *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 637 F.Supp. 1333, 1341 (N.D.Ill.1986) (recognizing *res judicata* precludes action against agent where plaintiff had previously litigated same claims against principal if the prior action concerned a matter within the agency); *see also* Restatement (Second) of Judgments § 51 (1980).

Accordingly, the succession interests under the deed of trust and the allegations of a principal-agent relationship are sufficient to establish that defendants have met the iden-

tity of parties factor for application of *res judicata.*

■ Moreover, to the extent that Bullock's chancery action challenged the conduct and activities of unnamed parties to that action, such unnamed parties should be considered "unnamed defendants" to the chancery action for purposes of *res judicata.* Where a party's conduct has been challenged in a prior state court action, and where the state court has made a determination regarding that party's actions, that party is in effect an unnamed defendant in the state court action. *Gates,* 865 F.Supp. at 1239.

In this federal court action, Bullock's claims arise from the conduct of two of the defendants, GE Capital, purported to be the agent of First Boston and/or Mortgage Properties, and Jane Haddock. Bullock claims that the actions of GE Capital prior to the March 15, 1993, foreclosure, including purported negotiations regarding the property at 224 West Lakeview Drive, Clinton, Mississippi, and an alleged failure to give notice of the foreclosure, invalidated the March 15, 1993, foreclosure. This alleged conduct by GE Capital was raised by Bullock as the basis for his claims and defenses in the state chancery proceeding.

Although only Jane Haddock was a named defendant in the chancery court action, Bullock challenged the actions of both Haddock and GE Capital (and implicitly GE Capital's purported principals, First Boston and Mortgage Properties) in that proceeding. Thus, although Bullock chose not to name GE Capital as a formal defendant in the chancery court action, Bullock's chancery court lawsuit necessitated inquiry into GE Capital's conduct.

In her opinion finding against Bullock on all of his claims, the Hinds County Chancellor exonerated the conduct of both GE Capital and Haddock. Specifically, the Chancellor found that the actions of GE did not invalidate the March 15, 1993, foreclosure and that the actions of Haddock were not wrongful nor did they damage Bullock. It appears, then, to this court that GE Capital, and the principals on behalf of whom GE Capital purportedly acted, were unnamed defendants in the state court lawsuit. Ac-

cordingly, GE Capital, First Boston and Mortgage Properties are to be considered defendants to the chancery action for *res judicata* purposes.

For the two distinct reasons stated above, the court finds that there is identity of the parties to the state court and federal court actions.

### (4) *Identity of Person Against Whom Claim is Made.*

In determining whether this identity is met, the court must consider the capacity in which the parties to the two actions were sued. *Gates,* 865 F.Supp. at 1239, citing *Moses v. Flanagan,* 727 F.Supp. 309, 312 (N.D.Miss.1989).

Haddock was sued in both the chancery and federal actions in her individual capacity as the purchaser of the property at the foreclosure sale.

A privity of interest, common relationship, or substantial identity exists between Haddock and the remaining defendants by virtue of her status as the purchaser as previously discussed. Consequently, this factor for the application of *res judicata* has been met as well.

### (5) *All Identities Are Satisfied.*

Following a trial on the merits at which Bullock was allowed to present evidence and argue his case, the chancery court applied the applicable law to those facts and found that Bullock had no right of recovery related to the March 15, 1993, foreclosure or the facts and circumstances surrounding the foreclosure. Accordingly, Bullock should not be allowed to relitigate those same claims here. Defendants are entitled to a judgment in their favor on all claims asserted in this case based upon the doctrine of *res judicata.*

### C. *Collateral Estoppel*

The court also finds that Bullock's claims are barred under the doctrine of collateral estoppel. Under the doctrine of collateral estoppel, a party is precluded from "relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different

cause of action is the subject of the subsequent action." *Dunaway,* 422 So.2d at 751.

Although the identities necessary under Mississippi law to support a finding that collateral estoppel should be applied are substantially similar, in most respects, to those necessary to support the application of *res judicata,* Mississippi law has recognized that strict identity of the parties is not required in order to invoke collateral estoppel. As the Court noted in *Jordan v. McKenna,* 573 So.2d 1371 (Miss.1990):

> (W)here a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment, that determination is conclusive ... (against the party against whom it was made) in a subsequent suit on a different cause of action.... The unsuccessful party is precluded from relitigating the fact so found.

*Jordan,* 573 So.2d at 1375 (citations omitted). *See Garraway v. Retail Credit Co.,* 244 Miss. 376, 141 So.2d 727, 730 (1962); *Dunaway,* 422 So.2d at 751 (collateral estoppel applies to matters actually litigated and determined in a prior suit); *Magee v. Griffin,* 345 So.2d 1027, 1032 (Miss.1977) (same).

This application of collateral estoppel was most recently reaffirmed by the United States Court of Appeals for the Fifth Circuit in *Raju v. Rhodes,* 7 F.3d 1210 (5th Cir. 1993), *cert. den.,* —— U.S. ——, 114 S.Ct. 1543, 128 L.Ed.2d 194 (1994), wherein the Court held that an earlier state court proceeding in which the plaintiff was unsuccessful on his claims barred a subsequent relitigation of those same claims in federal court against another defendant even though the federal court defendant was not a party to the prior state court action. In *Raju,* aggrieved over the loss of his position as Program Director of a medical school transplant program, the plaintiff initiated a state administrative grievance against his supervisor alleging discrimination, harassment, and demotion of the plaintiff without cause. Before this administrative grievance was concluded, the plaintiff filed a second action in state court against his supervisor asserting tort and contract claims. Later, the plaintiff amended the state court action to include a

constitutional claim pursuant to Title 42 U.S.C. § 1983. The plaintiff's state court action later was removed to federal court on the basis of the federal question. While that action was pending in federal court, the state administrative grievance committee rendered a decision against the plaintiff, finding that the plaintiff's supervisor had acted properly; had not engaged in harassment; had not discriminated against the plaintiff; and had not demoted the plaintiff. Plaintiff then referred for review to the Board of Trustees of the State Institutions of Higher Learning (hereinafter "the Board of Trustees"). The Board of Trustees affirmed the findings of the grievance committee, and the plaintiff applied for certiorari with the Circuit Court for the First Judicial District of Hinds County, Mississippi, naming the Board of Trustees as defendant. The Hinds County Circuit Court affirmed the decision of the Board of Trustees, finding that the substantial evidence supported the Board of Trustees' determination that the plaintiff was not demoted; that the plaintiff was not personally harassed by his supervisor; and that no due process violations occurred during the grievance proceedings. Thereafter, the federal district court granted summary judgment to the plaintiff's supervisor in the removed state court action. The district court found that all of the plaintiff's claims, including his § 1983 claim, were collaterally estopped by the administrative findings and the state court's affirmance of those findings. The Fifth Circuit found no error in the disposition of the removed case by the federal district court.

■ This court is persuaded that defendants have shown the applicability of collateral estoppel here. The points key to plaintiff's successful pursuit of this lawsuit have already been decided against him in the state court litigation.

So, based on the foregoing analysis, this court holds that the defendants' motion for summary judgment attacking all of plaintiff's claims on the basis of collateral estoppel also must be granted.

### D. Claims Based on the United States Constitution and Title 42 U.S.C. § 1983

■ GE Capital also has filed a motion for partial summary judgment as to Bullock's claims based on Title 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. In Paragraphs I, II and XIII of his Complaint, plaintiff Bullock has alleged claims and damages pursuant to Title 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. Claims pursuant to both Title 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution require "state action." Title 42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured....

■ By its terms, § 1983 requires that the person accused of injuring another be acting under state statute, ordinance, regulation, custom or usage, which has been shortened into the term "under color of state law." *See, e.g., Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873, 877 n. 7 (5th Cir.1975), *cert. den.,* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975). The statutory requirement of action "under color of state law" for § 1983 and the "state action" requirement of the Fourteenth Amendment are identical. *See Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2750–51, 73 L.Ed.2d 482 (1982).

■ The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law. Its purpose was to protect the people from the State; it does not protect citizens from one another. *See United States v. Cruikshank,* 92 U.S. 542, 554, 23 L.Ed. 588 (1875). The Fourteenth Amendment does not shield against "merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1946). In order for the

challenged actions to be covered by the protections of the due process clause, the court must determine that "there is a sufficiently close nexus between the State and the challenged action ... so that the action ... may fairly be treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

█ GE Capital argues in its motion that "state action" is nowhere to be found in this dispute which has at its heart simply a foreclosure under state law and procedures. GE Capital challenges Bullock, who has the burden of proof on this point, to show otherwise.

Bullock responds to GE Capital's motion by agreeing that he has the burden of proving that the actions of the defendants constitute "state action" in order to succeed on his claims under the Fourteenth Amendment and § 1983 of Title 42 U.S.C. According to Bullock, state action undergirds GE's conduct because:

(1) GE failed to properly determine Bullock's interest in the property subject to foreclosure and, accordingly, failed to give him notice of the foreclosure since the Mississippi statutes encourage such conduct; and

(2) GE, in essence, seized the personal property contained in the residence and sold it as a part of the foreclosure and this is a typical state function.

Further expounding on his theory of state action, Bullock asserts that Mississippi's power of sale foreclosure statute encourages foreclosures and thus supplies the missing "state action" required for these claims and that individual defendant Jane Haddock's alleged refusal to return personal property at the house that she purchased at the foreclosure sale is "akin to seizure by a sheriff or other governmental actor."

Neither of Bullock's arguments has vitality. In 1986, the Mississippi Supreme Court decided a constitutional challenge to Mississippi's power of sale foreclosure statute, Miss.Code Ann. § 89–1–55, by first deciding the very issue before this court whether the use of the power of sale foreclosure by a bank constitutes state action giving rise to protection under the Fifth and Fourteenth Amendments to the United States Constitution. *Leininger v. Merchants & Farmers Bank*, 481 So.2d 1086, 1088 (Miss.1986). The Mississippi Supreme Court framed the question thusly:

> The threshold question in the instant case is whether the use of the power of sale foreclosure by the trustee of appellant's deed of trust constituted "state action" so as to invoke Fourteenth Amendment protection.

*Leininger*, 481 So.2d at 1088. Hence, there is no room for doubt whether the Mississippi Supreme Court addressed the precise issue now before this court.

Citing similar decisions from six federal circuit courts of appeal and seven states [7] on its way to a decision, the Mississippi Supreme Court held that:

> [n]onjudicial foreclosures of deeds of trust constitute private action authorized by contract and do not come within the scope of the due process clause of the federal constitution.... The trial court was correct in ruling that there was no 'state action' involved.

*Leininger*, 481 So.2d at 1090.

Similarly, in 1975, the Fifth Circuit Court of Appeals, in construing the Texas Foreclosure statute, which is nearly identical to the Mississippi statute in all pertinent parts, found that use of the procedure did not constitute "state action." *Barrera v. Security Building & Investment Corporation*, 519 F.2d 1166, 1170 (5th Cir.1975).

**7.** *Leininger v. Merchants & Farmers Bank, Macon*, 481 So.2d 1086 at 1089 states:

"Other state court decisions reaching similar conclusions include *Garfinkle v. Superior Court of Contra Costa County*, 21 Cal.3d 268, 146 Cal.Rptr. 208, 578 P.2d 925 (1978); *Macon–Atlanta State Bank v. Gall*, 666 S.W.2d 934 (Mo.Ct.App.1984); *Dennison v. Jack*, 172

W.Va. 147, 304 S.E.2d 300 (W.Va.1983); *Kennebec, Inc. v. Bank of the West*, 88 Wash.2d 718, 565 P.2d 812 (1977); *Coffey Enterprises Realty & Development Co., Inc. v. Holmes*, 233 Ga. 937, 213 S.E.2d 882 (1975); *Armenta v. Nussbaum*, 519 S.W.2d 673 (Tex.Civ.App. 1975)."

Judge Wisdom, upon holding that power of sale foreclosures does not constitute "state action" for purposes of the Fourteenth Amendment, found:

> Virtually all formal private arrangements assume, at some point, the supportive role of the state. To hold that the state, by recognizing the legal effect of those arrangements, converts them into state acts for constitutional purposes would effectively erase to a significant extent the constitutional line between private and state action and subject to judicial scrutiny under the Fourteenth Amendment virtually all private arrangements that purport to have binding legal effect.

*Barrera,* 519 F.2d at 1170. The Fifth Circuit left intact this constitutional line and found that there is no state action in nonjudicial foreclosures. *Barrera,* 519 F.2d at 1174.

Bullock next claims that various actions of the private individual, defendant Jane Haddock, provide the necessary "state action" to support his Fourteenth Amendment and Section 1983 claims, citing *Hall v. Garson,* 430 F.2d 430 (5th Cir.1970). In *Hall,* a state statute gave a landlord the right to enter a leased premises and to seize property found in the leased premises in an amount equal to the amount of back rent. The Fifth Circuit found that the allegations stated in the Complaint were sufficient to survive a 12(b)(6) Motion to Dismiss for Failure to State a Claim. *Hall v. Garson,* at 434.

The *Hall* case gives Bullock neither support nor comfort, however, because the Fifth Circuit has refused to extend the state action analysis for private actions beyond the facts in *Hall* and because the motion before this court is one for partial summary judgment which requires more than reliance on the pleadings.

■ This court finds no facts here to show that Haddock acted in any other capacity except that of a private individual. She was not a state official; she did not act in consonance with a state official; she is not a person for whom the state is responsible; and she has not obtained significant aid from state officials in obtaining title to the real property in question. *See Daniel v. Ferguson,* 839 F.2d 1124, 1130 (5th Cir.1988), citing *Lugar v. Edmondson Oil Company,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982). Therefore, finding no "state action" as alleged by plaintiff, this court concludes that Bullock cannot prove an element of his case on which he bears the burden of proof. Hence, GE Capital is entitled to judgment on the Title 42 U.S.C. § 1983 and Fourteenth Amendment claims as a matter of law.

■ Bullock also seeks attorney fees pursuant to Title 42 U.S.C. § 1988.[8] Such fees are available *only* in an action "to enforce a provision of section 1981, 1981a, 1982, 1983, 1985, and 1986 of this title," or 20 U.S.C. § 1681 *et seq.,* 42 U.S.C. § 2000bb *et seq.,* 42 U.S.C. § 2000d *et seq.,* or "section 1981 of this title...." Title 42 U.S.C. § 1988(b).

Since this court finds no state action here to support Bullock's § 1983 and Fourteenth Amendment claims, Bullock's § 1988 claim for attorney fees is without any foundation, and summary judgment is likewise proper as a matter of law.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the motion of GE Capital Asset Corporation for partial summary judgment on plaintiff's §§ 1983, 1988 and Fourteenth Amendment claims be granted. Accordingly, this court hereby dismisses those claims.

**IT IS FURTHER ORDERED AND ADJUDGED** that the joint motion for summary judgment brought by GE Capital Asset Corporation, CS First Boston Mortgage Capital Corporation, Mortgage Properties Corporation, and Jane W. Haddock attacking all of plaintiff's claims under the doctrine of *res judicata* and collateral estoppel be granted. Accordingly, this court enters summary judgment against the plaintiff Harrison Bullock and in favor of all remaining defendants.

---

8. Title 42 U.S.C. § 1988(b) provides that:

 In any action or proceeding to enforce a provision of section 1981, 1981a, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

This court will enter a separate judgment dismissing this action in accordance with the local rules.

**SO ORDERED AND ADJUDGED.**